IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| DENNIS R. RYNO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  6:20-cv-03378-MDH |
| | ) | |
| CITY OF WAYNESVILLE, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 22). For the reasons set forth herein, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This case arises out of an alleged false arrest of Plaintiff, Dennis Ryno ("Plaintiff"), by the Waynesville Police Department ("WPD") on October 30, 2014, and actions subsequent to that, by both the WPD and the Pulaski County Prosecutor, Kevin Hillman ("Hillman"). Plaintiff filed an Amended Complaint on December 30, 2020 ("Complaint") (Doc. 12), alleging claims under 42 U.S.C. § 1983 and claims under Missouri state law.

The WPD conducted surveillance on Plaintiff, during the period October 23 through 30, 2014, by following Plaintiff's former girlfriend, Crystal Aynsley ("Aynsley") from place to place within the small town of Waynesville, Missouri. (Complaint, p. 13). The arrest occurred when Plaintiff, according to Officer Daniel Cordova ("Cordova") allegedly briefly pulled into the driveway of Kevin Phillips ("Phillips"), a companion of Aynsley, at 104 Summit Pass, and then backed out, backed down the street, and backed into the next driveway, 102 Summit Pass.

Plaintiff alleges that the surveillance was initiated by Hillman, because of reasons unrelated to any alleged crime by Plaintiff, that Cordova told Aynsley to seek out Plaintiff, and that Cordova lied about the alleged action that he claims gave him probable cause to arrest Plaintiff. Plaintiff alleges that searches of his car, laptop, home, and other property were without probable cause and/or based upon search warrants that were legally deficient.

Defendants have moved to dismiss Plaintiff's Amended Complaint for failure to state a claim. Plaintiff disagrees with several statements in the Introduction section of Defendants' Suggestions In Support Of Their Motion to Dismiss Plaintiff's Amended Complaint ("DefSug"), as being prejudicial:

a. Defendants incorrectly framed the reason for the surveillance), as being "based on allegations by. . . Aynsley, that Plaintiff was stalking her." (DefSug, p. 1) That was the excuse by the WPD, but Plaintiff believes that the evidence strongly reveals that the actual reason for the surveillance was that Hillman was concerned because of the depositions of July and August 2014 and the events of September 24 and 25, 2014 (Complaint, pp. 9-12, ¶¶ 4-14). It is also significant that Aynsley had made only one complaint, one that was minor and easily seen to be suspect, in the nine months prior to the start of the surveillance, based upon an incident staged by Aynsley, a few hours after she had been told that Plaintiff's adult abuse case against her would go to trial in three months (*Id.*, p. 13, ¶ 18 and p. 11, ¶ 10).

b. Defendants correctly stated that Aynsley had an Order of Protection against Plaintiff at that time (DefSug, p.1), but what is more significant is that Plaintiff had an adult abuse case against Aynsley at that time, also, and eventually was awarded a Full Order of Protection against her (Complaint, p. 8, ¶ 1 p. 40, ¶ 59d). He had applied for the order

because she was engaging in the very actions that she engaged in during the surveillance, seeking Plaintiff out, creating encounters, so as to falsely accuse him of stalking her. (*Id.*, p. 8, ¶ 1). This is significant because the WPD conducting the surveillance knew that Plaintiff had accused her of this behavior (*Id.*, p. 74, ¶ 146) and Cordova later testified that she was doing exactly that during the surveillance (Complaint, pp. 72-74, ¶¶ 143-146).

c.  Defendants' statement that "WPD Chief Daniel Cordova, Officer John Meir, and Officer Victor Weir reported seeing Plaintiff driving near Aynsley's residence, driving near her on the street, and stationed in parking lots or near businesses where Aynsley was present" (*DefSug*, p. 1) can be misleading. The closest Plaintiff is alleged to have been to her residence was on Broadway Street. The WPD have never claimed that this was illegal or even suspicious. No legal document prohibited Plaintiff from being on this street, which, at its closest point, was 780 feet from her residence and only a very short stretch of the street could even be seen from her apartment (Complaint, p. 24, ¶ 29b). Plaintiff is alleged to have met her, while she rode with a friend, Phillips, one time, during the surveillance, a chance meeting that Plaintiff did not even know occurred, because he did not know the vehicle that Phillips drove, in spite of the false allegations of Cordova related to that meeting (*Id.*, p. 56, ¶ 94g). As to Plaintiff being stationed in parking lots or near businesses where Aynsley was present, the only incidents that this could seemingly be referring to occurred on October 28 and 30. On both occasions, the evidence shows that Aynsley and Phillips went to the location where she knew Plaintiff frequently went, to attempt to entice him to react in such a way that she could get him arrested, and the WPD apparently knew she was doing this (*Id.*, pp. 73-74, ¶¶ 145-146).

d. As for Defendants' claim that, "On October 30, 2014, Cordova and Meir observed Plaintiff lingering near a business where Aynsley was present. . ." (DefSug, p. 1), Plaintiff points out that Cordova was telling Aynsley to seek out Plaintiff, during the surveillance, as Meir has testified to (Complaint, p. 75, ¶ 149), and that Cordova stated in his own surveillance video, four times, that where Plaintiff was sitting was his "normal spot," or similar wording, and that there is no evidence that Plaintiff even knew Aynsley was present (*Id.*, p. 57, ¶ 94i).

e. It is true that Cordova would not admit, in testimony, that Plaintiff had not committed a crime, while on Summit Pass, the night of the arrest (DefSug, p. 2), but it is also true that Meir was with him at the time and has testified that Plaintiff did not commit a crime (Complaint, p. 47, ¶ 76), and it is also shown to be a fact that Cordova lied about the one act by Plaintiff that he claims was a crime, allegedly pulling into Phillips' driveway (*Id.*, pp. 50-53, ¶¶ 83-90).

Plaintiff brings claims of unreasonable seizure (Count I), conspiracy to cause false arrest under § 1983 (Count II), conspiracy to cause false arrest under Missouri law (Count III), unreasonable search (Count IV), fabrication of evidence (Count V), excessive bail (Count VI), abuse of process (Count VII), and negligent hiring, training, and supervision (Count VIII).

## STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *NEXTEP, LLC v. Kaba Benzing America, Inc.*, 2007 WL 4218977, *1 (E.D. Mo. 2007). When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are considered in the light most favorable to the plaintiff. *Id.* To avoid dismissal for failure to state a claim, Rule 8(a)(2) of the Federal Rules of Civil Procedure

requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. This statement requires that the plaintiff give the defendant facts sufficient to give fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id*. The court may dismiss the complaint when it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint. *See* id.

## DISCUSSION

### State law claims

Plaintiff brings state law claims in Counts I, III, IV, V, VI, VII, and VIII. All state law claims in the Complaint are barred by the statute of limitations in RSMo. § 516.130.1. The statute imposes a three-year statute of limitation for "[a]n action against a sheriff, coroner or other officer, upon liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty[.]" A municipal police officer is an "other officer." *Dilley v. Valentine*, 401 S.W.3d 544, 553 (Mo. App. W.D. 2013). The "doing of an act in [an] official capacity" means that a public servant is acting within the scope of what he or she is employed to do rather than being engaged in a personal frolic." The latest Plaintiff can state a claim is February 10, 2016, the day all charges against him were dismissed. At latest, Plaintiff would have been able to bring his claims by February 10, 2019. Plaintiff did not file his claims until October 30, 2019. Therefore, all state law claims brought in the Complaint are dismissed and Counts III and VII are dismissed.

### § 1983 claims

**A. Probable cause**

    a. Arrest

Counts I, II, IV, V, VI, and VIII all bring claims pursuant to § 1983. Claims I, II, IV, VII, and VIII are contingent on whether or not probable cause existed to arrest Plaintiff on October 30, 2014 and subsequently search his home and belongings. A § 1983 false arrest claim relies on the Fourth Amendment right to be free from unreasonable searches and seizures. A warrantless arrest by a law officer is reasonable where there is probable cause to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts and totality of the circumstances known to the arresting officer at the time of the arrest. *Id*. In the Eighth Circuit, "arguable probable cause" exists even where an officer mistakenly arrests a suspect but believes it is based in probable cause if the mistake is objectively reasonable. *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th Cir. 2013) (affirming dismissal where deputies had qualified immunity because arguable probable cause existed for arrest).

Plaintiff's allegations indicate that Aynsley had an Order of Protection against Plaintiff at the time of police surveillance and Plaintiff's arrest. (Complaint, p. 39, ¶ 59(d); p. 61, ¶ 109, 112). Plaintiff alleges that "Aynsley had made numerous allegations of stalking by Plaintiff, over the time period beginning on or about August 15, 2012." (Complaint, p. 11, ¶ 9). Plaintiff's allegations further cite to reports made by Cordova, Meir, and Weir, in which they state they observed, in the days leading up to Plaintiff's arrest. However, Plaintiff disputes these claims:

1. Meir and Cordova witnessed Plaintiff drive down Aynsley's street of residence at a low speed as to see if her vehicle was in the parking lot on October 25, 2014. (Complaint, p. 12 ¶ 15).

2. Cordova witnessed Plaintiff following Aynsley in his vehicle on October 25, 2014. (Complaint, p. 13 ¶ 15(e)).

3. Weir witnessed Plaintiff's vehicle pass behind Aynsley's truck, and that Aynsley witnessed Plaintiff drive by her place on October 27, 2014. (Complaint, p. 14-15, ¶ 16(a)).

4. Cordova witnessed Plaintiff follow Aysnley to a parking lot and then subsequently position himself adjacent to Aynsley, parked his car facing where Aynsley was, and stayed for approximately 30 minutes on October 28, 2014. (Complaint, p. 16, ¶ 18(c)).

Plaintiff alleges, "On October 30, 2014, as Plaintiff backed into a driveway at 102 Summit Pass in Waynesville, to turn around, plainclothes officers Cordova and Meir used their vehicle they were in…and blocked Plaintiff's vehicle into the driveway." (Complaint, p. 2, ¶ 2). "It was later revealed that the pickup of Ms. Crystal Aynsley, former girlfriend of Plaintiff, was parked in the driveway, and that the residence belonged to [Aynsley's male friend]." (Complaint, p. 2-3, ¶ 4). Indeed, Cordova's report stated that he witnessed Plaintiff pull into Aynsley's male friend's driveway directly next to where Aynsley had parked her vehicle. (Complaint, p. 17-18, ¶ 18(g)). Plaintiff was arrested and subsequently charged with harassment and stalking. (Complaint, p. 42).

Officers are generally entitled to rely on the veracity of information supplied by the victim of a crime—in this case, Aynsley. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010). The offenses of both harassment and stalking focus on the purpose or intent of the perpetrator to disturb the victim, so Defendants were entitled to "rely on the implications of the information known to [them] when assessing whether [Plaintiff] possessed the state of mind required for the crime" rather than just what they personally witnessed at the time. *Royster v. Nichols*, 698 F.3d 681, 688 (8th Cir. 2012). In addition, Defendants argue that they could have reasonably believed that Plaintiff was violating the order of protection by repeatedly appearing

within Aynsley's vicinity and staking out her vehicle, even if it was later determined that this would not violate the protection order. However, Plaintiff disputes that he followed Aynsley, had been observed stalking Aynsley, and that he had no reason to be at Summit Pass where he pulled into her male friend's driveway and turned around. Analyzing the facts in favor of Plaintiff, Plaintiff's allegations call into question Defendants' alleged basis for arresting Plaintiff. Therefore, a genuine issue of material fact exists as to whether Defendants had probable cause to arrest Plaintiff.

> b. Search of Plaintiff's car, home, and belongings

Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the…action was justified at its inception,' second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985).

Plaintiff claims his vehicle was searched without a warrant, without probable cause, or other legal justification. (Complaint, p. 94, ¶ 8). "Plaintiff's vehicle was moved from the driveway it was in to the side of Summit Pass Road and was searched and impounded by WPD officers." (Complaint, p. 3, ¶ 7). Police may conduct a warrantless search of a lawfully impounded vehicle, in other words, an inventory search, even in the absence of probable cause. *United States v. Petty*, 367 F.3d 1009, 1011–12 (8th Cir. 2004). "Inventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." *United States v. Kennedy,* 427 F.3d 1136, 1143 (8th Cir. 2005). However, police "may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." *Id*. There are no allegations or evidence that Defendants failed to conduct the search in accordance with

standardized search procedures. Therefore, Plaintiff's allegations do not state a Fourth Amendment violation as to the search of his vehicle.

Plaintiff also claims the Defendant Weir obtained search warrants for Plaintiff's home and personal items, but that the warrants were obtained with affidavits "based upon false statements." (Complaint, p. 3, ¶ 8.) In the affidavit for a search warrant for Plaintiff's home, Weir stated that:

> On 10/30/2014 Dennis Ryno was arrested for violation of and ex parte and stalking after he followed Crystal Aynsley to Summit Pass. There is one way in and out of that area and he has no reason to be there especially since she had an order of protection against him. This arrest was the result of a three wing undercover operation wherein Mr. Ryno was observed stalking the victim repeatedly."

(Complaint, p. 29, ¶ 47).

Plaintiff alleges that the following were false statements: (1) Plaintiff followed Aynsley to Summit Pass; (2) Plaintiff was observed stalking Aynsley, and (3) Plaintiff had no reason to be on Summit Pass. The Constitution does not guarantee "that every fact recited in the warrant affidavit is necessarily correct." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Rather, the Constitution requires that "the information put forth is believed or appropriately accepted by the affiant as true." *Id*. As to the first allegedly false statement, Plaintiff alleges that the statement, written by Weir, was likely conveyed to him by Cordova, and Weir could have reasonably believed it to be true. However, as to the second and third allegedly false statements, the Court discussed above that a genuine issue of material fact exists as to whether the statements in the affidavit are true, and Plaintiff disputes that Weir believed the affidavit to be true when he wrote it.

Plaintiff also alleges wrongdoing with regards to statements in the affidavit about items observed during the inventory search of his car. Officers stated that items found included a light

brown color man's wig, numerous hats, gloves, a camcorder and other recording devices, a pair of binoculars, a police scanner, rope, coveralls, surgical gloves, rolls of large black trash bags, a hatchet, a pick ax, a shovel, and a crow bar. (Complaint, p. 22, ¶ 28(a)). The list of items found in Plaintiff's car was later characterized as a "murder kit". (Complaint p. 42, ¶ 68(a)). Plaintiff alleges that the WPD failed to mention many other items in the vehicle that were non-incriminating. (Complaint, p. 24, ¶¶ 33-40). With the additional allegations by Plaintiff as to the veracity of statements in the affidavit, there remains a genuine issue of material fact as to whether or not Defendants had probable cause to search Plaintiff's home and belongings.

Additionally, a police officer is entitled to qualified immunity unless the evidence establishes (1) that a plaintiff's constitutional rights have been violated, and (2) those rights were so clearly established at the time of the violation that a reasonable officer would have known that his actions were unlawful. *Id*. The "qualified immunity inquiry is not identical to the question of probable cause: an official enjoys qualified immunity for an objectively reasonable judgment about probably cause that turns out to be incorrect." *Bowden v. Meinberg*, 807 F.3d 877, 882 (8th Cir. 2015). Here, it is disputed whether Plaintiff's constitutional rights have been violated, so Defendants cannot assert qualified immunity at this stage.

**B. Claims**

Under Count I, Plaintiff states a claim of unreasonable seizure or false arrest against Defendants Cordova, Meir, and Weir. As discussed above, there is a genuine issue of material fact as to whether Defendants had probable cause to arrest Plaintiff. The § 1983 claim of Count I is therefore not dismissed.

Under Count II, Plaintiff alleges a conspiracy to cause false arrest or unreasonable seizure against Defendants Cordova, Meir, and Weir. To prove a 42 U.S.C. § 1983 conspiracy claim,

Plaintiff would need to be able to prove: (1) Defendants conspired to deprive him of constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured Plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id*. As discussed above, there is a genuine issue of material fact as to whether Defendants had probable cause to arrest Plaintiff. Count II is therefore not dismissed.

Under Count IV, Plaintiff alleges unreasonable search against Defendants Cordova, Meir and Weir. As discussed above, there is a genuine issue of material fact as to whether Defendants had probable cause to arrest Plaintiff. The § 1983 claim of Count IV is therefore not dismissed.

Under Count V, Plaintiff alleges fabrication of evidence against Defendants Cordova, Meir, and Weir. Plaintiff claims Defendants fabricated evidence by making false statements in the WPD reports. False evidence or evidence derived from a reckless investigation only violates a criminal defendant's due process rights if it is "used to deprive the defendant of [his or her] liberty in some way." *Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012). Indeed, "if an officer ... fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty interest." *Id*.

The WPD reports were authored after Plaintiff's arrest. Noted in the Complaint, the probable cause statement was dated October 30, 2014 and appears to be written after the arrest. The "WPD Narrative Report" by Meir is dated November 17, 2014. The "Ryno Stalking Investigation Report" by Weir is dated November 17, 2014. The "Cordova Supplemental" is dated

December 11, 2014. Any false statements in these reports could not have caused Plaintiff's arrest, and so could not have been used to deprive Plaintiff of his liberty.

Plaintiff also appears to assert a claim for suppression of evidence or "withheld evidence." *Brady v. Maryland*, 373 U.S. 83, 87 (1963) is limited to discovery after trial of information which had been known to the prosecution but unknown to the defense. *Nassar v. Sissel*, 792 F.2d 119, 121 (8th Cir. 1986). However, Plaintiff's criminal case at issue was dismissed before going to trial. Any alleged suppression or "withholding of evidence cannot be said to have deprived Plaintiff of a fair trial. Count V is therefore dismissed in its entirety.

In Count VI, Plaintiff alleges violations of the Eighth and Fourteenth Amendments for excessive bail against Defendant Hillman. Defendant Hillman, as the Pulaski County Prosecuting Attorney, does not set bail for criminal defendants. *See* RSMo. § 548.161; *see Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (claim for excessive bail properly dismissed where defendants, including county attorney, did not set the plaintiff's bail). Therefore, there is no claim against Defendant Hillman for excessive bail and Count VI is dismissed in its entirety.

In Count VIII, Plaintiff alleges negligent hiring, training, and supervision against Defendants WPD, the City of Waynesville, and Cordova. The claims against the Waynesville Police Department are dismissed because the police department is a department or subdivision of the City of Waynesville and lacks a legal identity apart from the city. *See Jordan v. Kansas City*, 929 S.W.2d 882, 887-88 (Mo. Ct. App. 1996) (municipal departments cannot be sued unless statutorily so authorized).

In order to state a claim for § 1983 liability against a municipality, the plaintiff must plead that a constitutional violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of*

*Independence, MO*, 829 F.3d 695, 699 (8th. Cir. 2016). The allegations in Plaintiff's Complaint relate most closely to the third option, failure to train or supervise. Plaintiffs alleging a failure to train must plead facts sufficient to show that (1) the municipality's training practices were inadequate; (2) the municipality's adoption of the practices showed indifference to the rights of others and reflects a deliberate or conscious choice by the municipality; and (3) the training deficiency caused the plaintiff's constitutional deprivation. *Ulrich*, 715 F.3d at 1061. A court analyzes a claim for failure to supervise the same way it analyzes a claim for failure to train. *Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1216 (8th Cir. 2013).

> Plaintiff's allegations state that:
>
> Defendants knew or should have known of the WPD officers' dangerous proclivities, insufficient training and supervision and the threat of harm to the rights of persons they posed in effectuating their duties, regarding investigations, surveillance, arrests, searches, obtaining search warrants, seizures and the writing of reports and handling of witnesses and witness statements.

(Complaint, p. 74, ¶ 8). However, Plaintiff does not include any facts to support the conclusion that Defendants failed to train or supervise WPD officers, including Defendants Cordova, Weir, and Meir, in these areas mentioned. Plaintiff also fails to allege any facts as to what the WPD training program includes or does not include. Plaintiff does not sufficiently plead that a failure to train or supervise caused a constitutional violation. *See Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 900 (E.D. Mo. 2019) (dismissing claim of failure to train against the city where pleading lacked facts specific to police department's training program and didn't show pattern of prior constitutional violations to put officials on notice of failure to train).

**CONCLUSION**

The Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. All of Plaintiff's state law claims, including the entireties of Counts III and VII, are dismissed with prejudice. All claims against the Waynesville Police Department and Pulaski County Prosecutor Kevin Hillman, including the entirety of Count VI, are dismissed with prejudice. Count V is dismissed without prejudice. Count I, Count II, and Count IV are not dismissed.

**IT IS SO ORDERED.**

Dated: March 18, 2021

  */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**United States District Judge**